Daniel G. Albert, J.
This is a proceeding, pursuant to CPLR article 78, to review and annul a determination of the respondent Authority, made without a hearing, which disapproved petitioner’s application for an eating place beer license.
*854 The license is sought for the sale of beer for on-premises consumption at a restaurant known as ‘ ‘ Zum Zum ’ ’ operated by the petitioner in the Smith-Haven Mall, a shopping center located in Smithtown, Suffolk County.
The basis of the Authority’s determination was its finding that the sole stockholder and principal officer of the petitioner, Bichard Sheresky, had previously obtained a liquor license for a Manhattan restaurant, known as the 1 ‘ Tin Lizzie ’ ’ and owned by Bick’s Place, Inc., of which Bichard Sheresky was president, by making ‘ ‘ false material statements ” in an affidavit filed with the Authority.
It appears that the application for a liquor license by Bick’s Place, Inc., was approved in October, 1966, prior to the actual completion of construction of the restaurant premises, on condition that Sheresky was to submit an affidavit, prior to issuance of the license itself, stating that the financing of the restaurant was actually accomplished as set forth in the application. Sheresky submitted an affidavit to that effect and the license issued on March 22, 1967.
The “ false material statements ” in that affidavit, according to the Authority, were Sheresky’s failure to disclose that:
(1) subsequent to the filing of the application but prior to submission of the affidavit and issuance of the license, Bick’s Place, Inc. borrowed $10,000 from Tryan Music, Ltd., which installed a “ juke box ” in the premises;
(2) that the licensee and Tryan Music, Ltd. executed a security agreement on the fixtures at the “ Tin Lizzie ” to secure the loan;
(3) that during the same period, the licensee borrowed $3,500 from Planetary Becreation Corp., the concessionaire for the “ hat check ” facilities at the “ Tin Lizzie ”, and
(4) that Sheresky and his brother, who is also a director and officer of the petitioner herein, held stock options in Bick’s Place, Inc.
The major reason for the Authority’s disapproval of the instant application appears to be the prior transaction of Sheresky with Tryan Music, Ltd.
As set forth in its decision, the Authority claims that:
“Investigation by the Authority as to Tryan Vending indicates that Thomas Eboli, alias Tommy Byan, was formerly the owner or co-owner of two businesses, one being a cigarette vending machine business and the other a juke box operation. Michael Genovese, brother of Vito Genovese, was associated with Eboli in said businesses. About 1958, Eboli purported to *855 sell the cigarette vending machine business. Despite the sale, Eboli continued on the payroll of the purchaser throughout the years following the sale. The purchaser renamed the Vending business, Tryan Vending. ‘ Tryan ’ is a contraction of Tommy Ryan, the alias of Eboli.
“In 1965, the Authority served a subpoena on Eboli’s juke box business, then known as Jet Music Corp. Eboli challenged the right of the Authority to subpoena the records of his concern, Jet Music Corp., for the purpose of a general investigation, and the subpoena was vacated by the Court. Immediately thereafter, Eboli sold the juke box business to the same purchaser who had bought the cigarette vending business. The purchaser renamed the juke box business Tryan Music Ltd. Despite this sale, Eboli continued on the payroll of the purchaser.
11 Eboli receives $450 weekly from Tryan Music Ltd. and Tryan Vending. He has no regular duties. He has been absent from the Tryan concerns for considerable periods of time since the summer of 1968 but continues to receive $450 weekly without interruption.
“ It is common knowledge and an investigation by the Authority confirms that Thomas Eboli, alias Tommy Ryan, is a chieftain of the Mafia and is reputed to be a possible successor to the criminal empire of Vito Genovese, the deceased overlord of this underworld organization. For years, his name, picture and reports of his activities have appeared in newspapers and periodicals in this State. Hearings before the United States Senate Sub-Committee investigating organized crime revealed that Eboli is a “ Don ’ ’ or boss in the Vito Genovese family of the Cosa Nostra. Eboli was recently called before a Grand Jury and, also, before the State Investigation Commission, at which time he pleaded his constitutional privilege and refused to answer questions. He also has a criminal record.
“ The Authority continues to be greatly concerned with the infiltration of monies into licensed premises from the criminal underworld and other undesirable persons, and the Authority has found Eboli, alias Tommy Ryan, to be a person not fit and proper to hold a liquor license or to hold any financial interest in premises licensed by the Authority.
“ The Authority’s records reveal that although Sheresky obtained other loans from dairy, merchandise and laundry firms and reported said loans to the Authority, at no time did he report to the Authority the $10,000 loan from Tryan.”
In this proceeding, the petitioner does not deny that the transactions set forth above actually took place or that Sheresky failed to disclose them in his 1967 affidavit. Petitioner claims. *856 however, that the failure to disclose the loans was not deliberate, and that Sheresky had no knowledge of or acquaintance with Eboli, or Tommy Ryan, or any of the principals in Tryan Music Ltd. or Tryan Vending. Further, petitioner contends that findings to the contrary by the Authority were without any foundation and, therefore, the determination herein complained of was arbitrary and capricious.
Certainly, the Authority has the power to enforce, by appropriate action, the requirement that an applicant disclose the source of all funds used in connection with a liquor business (Matter of Farina v. State Liq. Auth., 20 N Y 2d 484, 493; Matter of Kendzie v. O’Connell, 283 App. Div. 256, 257). It is equally certain that the approval or disapproval of an application for a license is discretionary with the Authority and must be sustained unless there exists no reasonable basis for the exercise of discretion in the manner complained of (Matter of Gambino v. State Liq. Auth., 4 AD 2d 37, 38, affd. 4 N Y 2d 997).
In this court’s opinion, the Authority’s determination was based on conclusions that have no factual support in the record. Initially, the fact that Sheresky in his 1967 application on behalf of Rick’s Place, Inc., failed to apprise the Authority that he and his brother held options for stock in that corporation does not warrant any adverse conclusion. The form of application supplied by the respondent Authority does not contain any request for such information. Further, the Authority learned of the Sheresky’s options when, on the instant application, Richard Sheresky disclosed that part of the funds being used for the new restaurant came from the sale of his and his brother’s options for stock in Rick’s Place, Inc. That circumstance certainly does not indicate an intent to conceal the existence of such options.
Insofar as the undisclosed loans are concerned, it appears that the making of such loans is a fairly common practice in the industry and, in this court’s opinion, the failure of Sheresky to report two such transactions made after the filing of the original application does not support the conclusion that Sheresky knew the principals of Tryan Music, Ltd., or that he knew such principals would be considered undesirable by the Authority. There is nothing to indicate that Tryan, by virtue of the loans, acquired any interest in or control over Rick’s Place, Inc., or that Tryan or Eboli has any interest in or control over the restaurant which the instant application concerns.
Accordingly, respondent’s determination is annulled and it is directed to issue the license applied for to petitioner.